UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOST HEALTHCARE, LLC, a Delaware limited liability company, | CASE NO. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| WESTCHESTER COUNTY HEALTH CARE CORPORATION, a New York public benefit corporation, WMC HEALTH NETWORK-ROCKLAND, INC., a New York non-profit corporation, WMC HEALTH NETWORK-ULSTER, INC., a New York non-profit corporation, GOOD SAMARITAN HOSPITAL, a New York non-profit corporation, ST. ANTHONY COMMUNITY HOSPITAL, a New York non-profit corporation, and BON SECOURS COMMUNITY HOSPITAL, a New York non-profit corporation, | |
| Defendants. | |

Plaintiff Host Healthcare, LLC ("Host Healthcare") states and alleges the following for its claims for relief against Defendants Westchester County Health Care Corporation ("WCHCC"), WMC Health Network-Rockland, Inc. ("WMC Rockland), WMC Health Network-Ulster, Inc. ("WMC Ulster"), Good Samaritan Hospital ("Good Samaritan"), St. Anthony Community Hospital ("St. Anthony"), and Bon Secours Community Hospital ("Bon Secours" and, collectively with WCHCC, WMC Rockland, WMC Ulster, Good Samaritan, and St. Anthony, "Defendants"):

1.  Plaintiff Host Healthcare is a Delaware limited liability company with its principal place of business in San Diego, California. The following entities hold a membership interest in Host Healthcare:

      a.      Medical Solutions L.L.C. is the sole member of Host Healthcare, LLC. Medical Solutions L.L.C. is organized under Delaware law. Medical Solution L.L.C.'s principal office is located in Omaha, Douglas County, Nebraska.

      b.      Medical Solutions Buyer, LLC is the sole member of Medical Solutions L.L.C. Medical Solutions Buyer, LLC is organized under Delaware law. Medical Solutions Buyer, LLC is not an operating company and therefore it does not have a principal office.

      c.      Medical Solutions Intermediate Holdings, LLC is the sole member of Medical Solutions Buyer, LLC. Medical Solutions Intermediate Holdings, LLC is organized under Delaware law. Medical Solutions Intermediate Holdings, LLC is not an operating entity and therefore it does not have a principal office.

      d.      Medical Solutions Holdings, Inc. is the sole member of Medical Solutions Intermediate Holdings, LLC. Medical Solutions Holdings, Inc. is a Delaware corporation. Because Medical Solutions Holdings, Inc. is a holding company and not an operating entity, it does not have a principal office.

2.      Medical Solutions L.L.C. acquired Host Healthcare, Inc. in 2022, and subsequently caused Host Healthcare, Inc. to transition to a limited liability company now known as Host Healthcare, LLC.

3.      Defendant Westchester County Health Care Corporation is a New York public benefit corporation with its principal place of business located at 100 Woods Road, Valhalla, NY 10595.

4.      Defendant WMC Health Network-Rockland, Inc. is a New York non-profit corporation with its principal place of business located at 100 Woods Road, Valhalla, NY 10595.

5. Defendant WMC Health Network-Ulster, Inc. is a New York non-profit corporation with its principal place of business located at 100 Woods Road, Valhalla, NY 10595.

6. Defendant Good Samaritan Hospital is a New York non-profit corporation with its principal place of business in Suffern, New York.

7. Defendant St. Anthony Community Hospital is a New York non-profit corporation with its principal place of business in Warwick, New York.

8. Defendant Bon Secours Community Hospital is a New York non-profit corporation with its principal place of business in Port Jervis, New York.

**JURISDICTION AND VENUE**

9. This Court has diversity jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because Host Healthcare and Defendants have complete diversity of citizenship, and because the amount in controversy as to each of the Defendants exceeds $75,000.00, exclusive of interest and costs.

10. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 (a) and (b) because Defendants reside in the Southern District of New York and a substantial part of the events giving rise to Host Healthcare's claims occurred in the Southern District of New York.

**FACTUAL BACKGROUND**

11. Host Healthcare is a healthcare staffing company that provides healthcare professionals to medical facilities across the country on a temporary basis. Host Healthcare provides medical facilities with recruitment, qualifying, and placement of temporary healthcare providers.

***Host Healthcare and BSHI entered into the Agreement for Supplemental Staffing Services.***

12. In 2020, Bon Secours Health System, Inc., n/k/a Bon Secours Mercy Health, Inc. ("BSHI"), was a healthcare network comprised of a number of healthcare facilities (the "Facilities"), including Good Samaritan, St. Anthony, and Bon Secours.

13. In 2020, BSHI requested that Host Healthcare provide BSHI and the Facilities, including Good Samaritan, St. Anthony, and Bon Secours, with the recruitment, qualifying, and placement of temporary healthcare providers, and Host Healthcare agreed to provide the aforementioned staffing services (the "Services").

14. On or about April 15, 2020, BSHI and Host Healthcare entered into the Agreement for Supplemental Staffing Services (the "Agreement"). A true and correct copy of the Agreement is attached hereto and incorporated as **Exhibit A**.

15. Attachment 1 to the Agreement identifies the Facilities governed by the Agreement and lists Good Samaritan, St. Anthony, and Bon Secours among the Facilities included in the BSHI network.

16. Accordingly, under the terms of the Agreement, Host Healthcare agreed to provide the Services at the Facilities, including Good Samaritan, St. Anthony, and Bon Secours.

***Host Healthcare and WMCHealth entered into the End User License Agreement.***

17. On or about August 2, 2022, Host Healthcare and "WMCHealth" entered into the End User License Agreement (the "EULA"). A true and correct copy of the EULA is attached hereto and incorporated as **Exhibit B**.

18. Under the terms of the EULA, Host Healthcare was required to "bill WMCHealth for all [Services]" and WMCHealth agreed to "pay [Host Healthcare] for all [Services] directly."

19. Under the terms of the EULA, Host Healthcare was required to "bill WMCHealth for all [Services] via the B4Health Software."

20. Accordingly, the EULA amended the Agreement and WMCHealth assumed the rights and obligations of BSHI under the Agreement.

21. The Agreement and the EULA now provide the contractual terms that govern Host Healthcare and WMCHealth's rights and obligations.

***The Identity of WMCHealth.***

22. The EULA does not identify the legal name of WMCHealth or provide any other identifying information.

23. Upon information and belief, WCHCC does business as Westchester Medical Center, Westchester Medical Center Health Network, and WMCHealth.

24. There is a website for WMCHealth, www.wmchealth.org, which includes an "About Us" page, https://www.wmchealth.org/about-us. A true and correct copy of the "About Us" page is attached hereto as **Exhibit C**.

25. According to the "About Us" page, WMCHealth is a 1,700-bed healthcare system headquartered in Valhalla, New York, with nine hospitals on seven campuses spanning 6,200 square miles of the Hudson Valley.

26. The "About Us" page also includes a list of "Our Hospitals," which identifies Good Samaritan, St. Anthony, and Bon Secours as hospitals that are affiliated with WMCHealth.

27. Attached hereto as **Exhibit D** is a true and correct copy of the Basic Financial Statements and Supplementary Schedules (with Management's Discussion and Analysis) December 31, 2018 and 2017 (with Report of Independent Certified Public Accountants (the "2018 Report"), which is available on the New York State Authorities Budget Office website, https://www.abo.ny.gov/annualreports/PARISAuditReports/FYE2018/State/WestchesterCountyHealthCareCorporation2018.pdf.

28. According to the 2018 Report:

a. WCHCC entered into an affiliation agreement with WMC Ulster on March 16, 2015;

b. BSHI has an affiliation agreement with WCHCC and WMC Rockland;

c. WMC Rockland is a subsidiary of WCHCC; and

d. "WCHCC is considered to be financially accountable" for various entities, including WMC Rockland and WMC Ulster.

29. Attached hereto as **Exhibit E** is a true and correct copy of the Basic Financial Statements, Supplementary Schedules (with Management's Discussion and Analysis) and Report of Independent Certified Public Accounts for WCHCC for December 31, 2021 and 2020 (the "2021 Report"), which is available on the New York State Authorities Budget Office website, https://www.abo.ny.gov/annualreports/PARISAuditReports/FYE2021/State/WestchesterCountyHealthCareCorporation2021.pdf:

30. Like the 2018 Report, the 2021 Report states:

a. BSHI entered into an affiliation agreement with WCHCC and WMC Rockland;

b. WMC Rockland is a subsidiary of WCHCC; and

c. "WCHCC is considered to be financially accountable" for various entities, including WMC Rockland and WMC Ulster.

31. On March 27, 2024, counsel for Host Healthcare attempted to contact and left a message for WCHCC's general counsel, attempting to clarify whether WCHCC, WMC Rockland, and/or WMC Ulster is the "WMCHealth" referenced in the EULA.

32. As of the filing of this Complaint, counsel for Host Healthcare has not received a response from WCHCC's general counsel.

33. Upon information and belief, WCHCC, WMC Rockland, and/or WMC Ulster is the "WMCHealth" referenced in the EULA. Accordingly, WCHCC, WMC Rockland, and WMC Ulster are hereafter referred to collectively as "WMCHealth."

***Defendants failed to pay for the Services provided by Host Healthcare.***

34. Consistent with the Agreement, WMCHealth requested that Host Healthcare provide WMCHealth and the Facilities, including Good Samaritan, St. Anthony, and Bon Secours, with Services.

35. Host Healthcare complied with its obligations under the Agreement and the EULA and provided the Services to the Facilities, including Good Samaritan, St. Anthony, and Bon Secours, and billed WMCHealth for all Services via the B4Health Software, in accordance with the EULA.

36. Host Healthcare provided requested Services to Good Samaritan.

37. A true and correct copy of the Detailed Account Balance identifying all outstanding amounts billed to WMCHealthvia the B4Health Software for Services provided at Good Samaritan is attached hereto and incorporated as **Exhibit F**.

38. Neither WMCHealth nor Good Samaritan has paid for the Services provided by Host Healthcare at Good Samaritan that are identified in **Exhibit F**.

39. As of the current date, WMCHealth and Good Samaritan have failed to pay invoices in the principal amount of $1,807,918.84, plus accrued interest available under New York law, for Services provided by Host Healthcare at Good Samaritan.

40. Host Healthcare provided requested Services to St. Anthony.

41. A true and correct copy of the Detailed Account Balance identifying all outstanding amounts billed to WMCHealth the B4Health Software for Services provided at St. Anthony is attached hereto and incorporated as **Exhibit G**.

42. Neither WMCHealth nor St. Anthony has paid for the Services provided by Host Healthcare at Good Samaritan identified in **Exhibit G**.

43. As of the current date, WMCHealth and St. Anthony have failed to pay invoices in the principal amount of $250,973.90, plus accrued interest available under New York law, for Services provided by Host Healthcare at St. Anthony.

44. Host Healthcare provided requested Services to Bon Secours.

45. A true and correct copy of the Detailed Account Balance identifying all outstanding amounts billed to WMCHealth the B4Health Software for Services provided at Bon Secours is attached hereto and incorporated as **Exhibit H**.

46. Neither WMCHealth nor Bon Secours has paid for the Services provided by Host Healthcare at Bon Secours that are identified in **Exhibit H**.

47. As of the current date, WMCHealth and Bon Secours have failed to pay invoices in the principal amount of $403,388.72, plus accrued interest available under New York law, for Services provided by Host Healthcare at Bon Secours.

48. Host Healthcare has made written and oral demands for payment, but WMCHealth has refused and continues to refuse to pay Host Healthcare for the Services identified in Exhibits F, G, and H.

## FIRST CAUSE OF ACTION

**Breach of Contract against WMCHealth**

49. Host Healthcare incorporates the allegations of the foregoing paragraphs as if fully stated below.

50. Host Healthcare and WMCHealth entered into the EULA.

51. Under the EULA, WMCHealth agreed to pay for the Services provided by Host Healthcare at the Facilities, including Good Samaritan, St. Anthony, and Bon Secours, pursuant to the Agreement.

52. Host Healthcare agreed to bill WMCHealth for all Services via the B4Health Software.

53. Host Healthcare performed all of its obligations under the Agreement and the EULA by providing the Services at Good Samaritan, St. Anthony, and Bon Secours, and billing WMCHealth for all Services via the B4Health Software.

54. WMCHealth breached the EULA by failing and/or refusing to pay the amounts due and owing pursuant to the invoices issued to WMCHealth via the B4Health Software.

55. As a direct and proximate result of WMCHealth's breach, Host Healthcare has sustained damages in the principal amount of $2,462,281.46.

56. The amount due from WMCHealth to Host Healthcare is liquidated and the date from which it is due is certain. Accordingly, Host Healthcare is entitled to recover statutory interest.

57. Host Healthcare has performed all conditions precedent and substantially performed its duties under the Agreement and EULA, or conditions precedent and performance have been waived or excused.

WHEREFORE, Plaintiff Host Healthcare, LLC respectfully requests that the Court enter judgment in its favor and against Defendant WMC Health Network in the amount of at least $2,462,281.46 in unpaid principal, plus prejudgment and post-judgment interest applicable under New York law, costs, and such other, further, and different relief as this Court deems just and equitable.

## SECOND CAUSE OF ACTION

### Unjust Enrichment/Quantum Meruit Against WMCHealth

58. Host Healthcare incorporates the allegations of the foregoing paragraphs 1 to 11 as if fully stated below.

59. WMCHealth expressly and/or impliedly requested that Host Healthcare provide the Services to its hospitals, namely, Good Samaritan, St. Anthony, and Bon Secours.

60. As a result, Host Healthcare provided the Services to Good Samaritan, St. Anthony, and Bon Secours, for the benefit of WMCHealth, Good Samaritan, St. Anthony and Bonsecours, in accordance with those express and/or implied requests.

61. Host Healthcare provided the Services to WMCHealth, Good Samaritan, St. Anthony, and Bon Secours, with the expectation that it would be paid for the Services.

62. WMCHealth accepted the Services from Host Healthcare provided at Good Samaritan, St. Anthony, and Bon Secours.

63. The Services provided by Host Healthcare were of value to WMCHealth.

64. WMCHealth understood that Host Healthcare expected to be paid for the Services.

65. Host Healthcare's provision of Services to WMCHealth through Good Samaritan, St. Anthony, and Bon Secours was intended to benefit, and did benefit, WMCHealth because Good Samaritan, St. Anthony, and Bon Secours had the necessary staff to provide care to their patients as a result of the Services provided by Host Healthcare.

66. WMCHealth has failed and/or refused to pay Host Healthcare for the Services and has received and retained benefits from Host Healthcare under circumstances that are inequitable and unconscionable to permit WMCHealth to avoid payment.

67. As a result of the benefit conferred on WMCHealth through Good Samaritan, St. Anthony, and Bon Secours, Host Healthcare is entitled to damages in an amount of at least $2,462,281.46, to be proven at trial.

WHEREFORE, Plaintiff Host Healthcare, LLC respectfully requests that the Court enter judgment in its favor and against Defendant WMC Health Network in the amount of at least $2,462,281.46 in unpaid principal, plus prejudgment and post-judgment interest as allowed by law, costs, and such other, further, and different relief as this Court deems just and equitable.

## THIRD CAUSE OF ACTION

**Unjust Enrichment/Quantum Meruit Against Good Samaritan**

68. Host Healthcare incorporates the allegations of the foregoing paragraphs 1 to 11 as if fully stated below.

69. Good Samaritan expressly and/or impliedly requested Services from Host Healthcare.

70. As a result, Host Healthcare provided the Services at Good Samaritan in accordance with those express and/or implied requests.

71. Host Healthcare provided the Services at Good Samaritan with the expectation that it would be paid for the Services.

72. Good Samaritan accepted the Services from Host Healthcare.

73. The Services provided by Host Healthcare were of value to Good Samaritan.

74. Good Samaritan understood that Host Healthcare expected to be paid for the Services.

75. Host Healthcare's provision of Services to Good Samaritan was intended to benefit, and did benefit, Good Samaritan because it had the necessary staff to provide care to its patients as a result of the Services provided by Host Healthcare.

76. Good Samaritan has failed and/or refused to pay Host Healthcare for the Services and has received and retained benefits from Host Healthcare under circumstances that are inequitable and unconscionable to permit Good Samaritan to avoid payment.

77. As a result of the benefit conferred on Good Samaritan, Host Healthcare is entitled to damages in an amount of at least $1,807,918.84, to be proven at trial.

WHEREFORE, Plaintiff Host Healthcare, LLC respectfully requests that the Court enter judgment in its favor and against Defendant Good Samaritan Hospital in the amount of at least $1,807,918.84 in unpaid principal, plus prejudgment and post-judgment interest as allowed by law, costs, and such other, further, and different relief as this Court deems just and equitable.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment/Quantum Meruit Against St. Anthony

78. Host Healthcare incorporates the allegations of the foregoing paragraphs 1 to 11 as if fully stated below.

79. St. Anthony expressly and/or impliedly requested Services from Host Healthcare.

80. As a result, Host Healthcare provided the Services at St. Anthony in accordance with those express and/or implied requests.

81. Host Healthcare provided the Services at St. Anthony with the expectation that it would be paid for the Services.

82. St. Anthony accepted the Services from Host Healthcare.

83. The Services provided by Host Healthcare were of value to St. Anthony.

84. St. Anthony understood that Host Healthcare expected to be paid for the Services.

85. Host Healthcare's provision of Services to St. Anthony was intended to benefit, and did benefit, St. Anthony because it had the necessary staff to provide care to its patients as a result of the Services provided by Host Healthcare.

86. St. Anthony has failed and/or refused to pay Host Healthcare for the Services and has received and retained benefits from Host Healthcare under circumstances that are inequitable and unconscionable to permit St. Anthony to avoid payment.

87. As a result of the benefit conferred on St. Anthony, Host Healthcare is entitled to damages in an amount of at least $250,973.90, to be proven at trial.

88. WHEREFORE, Plaintiff Host Healthcare, LLC respectfully requests that the Court enter judgment in its favor and against Defendant St. Anthony Community Hospital in the amount of at least $250,973.90 in unpaid principal, plus prejudgment and post-judgment interest as allowed by law, costs, and such other, further, and different relief as this Court deems just and equitable.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment/Quantum Meruit Against Bon Secours

89. Host Healthcare incorporates the allegations of the foregoing paragraphs 1 to 11 as if fully stated below.

90. Bon Secours expressly and/or impliedly requested Services from Host Healthcare.

91. As a result, Host Healthcare provided the Services at Bon Secours in accordance with those express and/or implied requests.

92. Host Healthcare provided the Services at Bon Secours with the expectation that it would be paid for the Services.

93. Bon Secours accepted the Services from Host Healthcare.

94. The Services provided by Host Healthcare were of value to Bon Secours.

95. Bon Secours understood that Host Healthcare expected to be paid for the Services.

96. Host Healthcare's provision of Services to Bon Secours was intended to benefit, and did benefit, Bon Secours because it had the necessary staff to provide care to its patients as a result of the Services provided by Host Healthcare.

97. Bon Secours has failed and/or refused to pay Host Healthcare for the Services and has received and retained benefits from Host Healthcare under circumstances that are inequitable and unconscionable to permit Bon Secours to avoid payment.

98. As a result of the benefit conferred on Bon Secours, Host Healthcare is entitled to damages in an amount of at least $403,388.72, to be proven at trial.

99. WHEREFORE, Plaintiff Host Healthcare, LLC respectfully requests that the Court enter judgment in its favor and against Defendant Bon Secours Community Hospital in the amount of at least $403,388.72 in unpaid principal, plus prejudgment and post-judgment interest as allowed by law, costs, and such other, further, and different relief as this Court deems just and equitable.

DATED this 8th day of April, 2024.

        **ANSELMI & CARVELLI, LLP**
        101 Avenue of the Americas, 8th and 9th Floors
        New York, New York 10013
        973-635-6300
        *Attorneys for Plaintiff Host Healthcare, LLC*

        By: _/s/ James Harry Oliverio_
        James Harry Oliverio